**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| JEREMIAH FARMER,<br>　　　　Plaintiff,<br><br>　vs.<br><br>GERARD SPEARS, et al.,<br>　　　　Defendants. | )<br>)<br>)<br>) Case No. 1:15-cv-01192-LJM-TAB<br>)<br>)<br>) |

**Entry on *Pavey* Hearing Rejecting Affirmative Defense of Failure to Exhaust Available Administrative Remedies**

**I. Background**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by Jeremiah Farmer, an inmate formerly confined at the Pendleton Correctional Facility ("Pendleton"). Mr. Farmer alleges that defendants Gerard Spears, Dr. Ron Westrate, and Dr. Herb Troyer were deliberately indifferent to his serious medical needs when they failed to provide adequate mental health treatment and removed him from the Insight Mental Health Program.

The defendants asserted as an affirmative defense their contention that Mr. Farmer failed to comply with the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"). The burden of proof as to this defense rests on the defendants. *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006).

On summary judgment, the defendants argued that none of the three relevant grievances filed by Mr. Farmer were properly filed beyond the second step of the process. They argued that the informal and formal steps were completed, but no timely appeal was filed. Genuine issues of fact existed as to the circumstances surrounding Mr. Farmer's

failure to complete the third step of the process. The defendants' motion for summary judgment was denied and a hearing in accordance with *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was scheduled. Pro bono counsel was recruited to assist Mr. Farmer in preparation for and participation in the hearing.

The *Pavey* hearing was conducted on December 14, 2016. The plaintiff participated by telephone, per his request. Mr. Farmer was ably represented by recruited counsel Mr. Andrew McNeil.[1] The defendants appeared by counsel. Documentary evidence was submitted, as well as testimony from Mr. Farmer and from the defendants' witness, Grievance Specialist Camay Francum.

For the reasons explained in this Entry, the Court finds that the defendants did not meet their burden of proof by showing that Mr. Farmer failed to exhaust his available administrative remedies prior to filing this lawsuit.[2]

---

[1] The Court greatly appreciates the efforts of volunteer counsel, Mr. McNeil, in representing Mr. Farmer for purposes of this hearing. Mr. McNeil's demeanor, preparation, and presentation were exemplary.

[2] In addition to their primary argument that Mr. Farmer failed to file an appeal, the defendants asserted in closing arguments that none of Mr. Farmer's grievances were filed before the complaint was filed on July 30, 2015. This argument was not presented at any point during the summary judgment process. A proposed amended complaint was filed December 2, 2015, and perhaps the defendants did not raise the timeliness issue on summary judgment because of the date of the amended complaint. Nonetheless, the issues that were framed during the briefing on summary judgment are the ones that necessitated the evidentiary hearing. Moreover, during the hearing, when questioned on cross-examination, Mr. Farmer testified that he had filed other grievances earlier than those discussed at the hearing but he had problems getting them delivered to the proper staff. Mr. Farmer was not put on notice that this timeliness issue would be raised. The issue of timeliness was not briefed on summary judgment and, therefore, that issue is waived and not considered in this ruling. The defendants have argued and continue to argue that Mr. Farmer did not file an appeal in response to the denials at step two of the grievance process. In this Entry, the Court has addressed that issue as framed by the ruling on summary judgment.

## II. Discussion
### A. Legal Standards

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). The statutory exhaustion requirement is that "[n]o action shall be brought with respect to prison conditions…by a prisoner…until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532.

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require.") (internal quotation omitted). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

"The PLRA does not [ ] demand the impossible." *Pyles v. Nwaobasi,* 829 F.3d 860, 864 (7th Cir. 2016). "Remedies that are genuinely unavailable or nonexistent need not be exhausted." *Id.* "A remedy becomes unavailable if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner

from exhausting." *Id.* (internal quotation omitted). "In such cases, the prisoner is considered to have exhausted his administrative remedies." *Id.*

## B. Findings of Fact

The following facts having either been stipulated by the parties or found by the Court to be true for purposes of the issue of exhaustion based on the testimony and documents presented during the hearing:

Mr. Farmer was incarcerated at Pendleton from July 29, 2014, until March 11, 2016. He was then transferred to Westville Correctional Facility ("Westville").

The Offender Grievance Process in effect at the relevant times was Indiana Department of Correction ("IDOC") Policy and Administrative Procedure 00-02-301, Offender Grievance Process ("Grievance Process"). This process went into effect on April 5, 2015, which is a modification of an earlier version of the Grievance Process that went into effect on January 1, 2010.

Under the applicable procedures of IDOC, the grievance process consists of three steps: (1) an informal step; (2) a formal Level I grievance step; and (3) a formal Level II appeal step. The Grievance Process identifies State Form 52897, "Offender Complaint-Informal Process Level," as the form for the informal step. The Grievance Process identifies State Form 45471, "Offender Grievance," as the form for the Level I grievance step.

Camay Francum has served as the Grievance Specialist at Pendleton since May of 2015.

Mr. Farmer has several mental illnesses, including bipolar disorder, manic depression, attention deficit hyperactivity disorder, antisocial personality disorder, and drug dependency.

### 1. Grievance #88706

Mr. Farmer successfully submitted a Level I grievance on September 2, 2015, under Grievance #88706, alleging that he was removed from the mental health Insight Program and had been denied adequate mental health treatment. Mr. Farmer's Level I Grievance #88706 was denied by Ms. Francum on October 30, 2015. EXs. 4, 5.

When Mr. Farmer received the denial of Grievance #88706, he wrote up his appeal and gave it to the guards. Mr. Farmer checked "disagree" and dated that form November 2, 2015. EX. 17, p. 1. He testified that the guards to whom he had to give his appeals were the same guards who "beat him up" and maced him in October 2015.

Ms. Francum received the appeal from Mr. Farmer dated November 2, 2015, but it was not timely filed within five business days of the return of the grievance. Rather, she received it in approximately April of 2016, about thirty (30) days after Mr. Farmer was transferred to Westville. At that time, Ms. Francum received a large packet from him containing several grievances, dating back to October of 2015.

### 2. Grievance #89100

Mr. Farmer successfully submitted a Level I grievance under Grievance #89100. This grievance form is dated September 3, 2015. IDOC records show a receipt date of October 7, 2015. EXs. 18, 19. The grievance seeks mental health care and to be placed in a mental health program. The Level I formal Grievance #89100 was denied by Ms. Francum on October 7, 2015. EX. 18. When Mr. Farmer received the denial of Grievance #89100, Mr. Farmer dated that form October 10, 2015, and checked "disagree." EX. 17, p. 2. He stuck this appeal in the bars of his cell either that same night or the following day for the guards to take. Ms. Francum testified that she did not receive

this appeal from Mr. Farmer until about thirty (30) days after Mr. Farmer was transferred out of Pendleton.

### 3. Grievance #89150

Mr. Farmer successfully submitted a Level I grievance on September 29, 2015, under Grievance #89150. Again he requested mental health care and placement in the Insight Program. EX. 7. The Level I formal Grievance #89150 was denied by Ms. Francum on October 9, 2015. EX. 8.

When Mr. Farmer received the denial of Grievance #89150, he dated that form on October 15, 2015, and checked "disagree." EX. 12, p. 6. He placed this appeal in the bars of his cell either that same night or the following day for the guards to take. Ms. Francum did not receive this appeal from Mr. Farmer until about thirty (30) days after he was transferred out of Pendleton.

### 4. Other Circumstances

Mr. Farmer testified that while he was at Pendleton, he was abruptly taken off all of his psychotropic medications and was without them during the period of August through October 2015. As a result, he attempted suicide and he had conflicts with, *i.e.,* assaulted, the guards. When he was transferred to Westville, he was given his medications again. The medications help his attention span and make it easier for him to work through the grievance process. Since Mr. Farmer has been at Westville, he has submitted grievances and has had no problems completing the administrative process. At Westville, inmates do not give their grievances to guards. Rather, they file them electronically. He also testified that since he has been back on his medications, he has not been written up once at Westville.

Ms. Francum testified that she did not receive the appeals submitted by Mr. Farmer within the proper time frame of five business days. She also stated that just noting his disagreement was not sufficient to constitute an appeal. Even though she acknowledged that the Grievance Process does not actually require any particular State form for an appeal, she was trained to return an appeal if it was not on the correct "appeal form." If an appeal was not received on a certain form, she would return the appeal, based on her training.

Based on this testimony, even if Ms. Francum had received the appeals at issue in a timely manner, she would have rejected them as not being filed on the proper form. Unlike the State forms that exist for the informal and formal Level I steps, however, there is no "form" that is required for an appeal under the Grievance Process.

The Court does not find that Ms. Francum lacks credibility. Rather, the Court finds that the appeals submitted by Mr. Farmer did not reach her after Mr. Farmer submitted them through other prison employees. Therefore, the appeals were not logged into the grievance system. The Court finds Mr. Farmer credible in stating that his appeals were provided to prison guards with whom he had experienced much conflict. The Court finds that once the appeals were taken from Mr. Farmer by the prison guards, their delivery to Ms. Francum was out of Mr. Farmer's control. He could not do any more to ensure that his appeals were delivered in a timely manner. The Court also finds it compelling that Mr. Farmer was abruptly deprived of his psychotropic medications. This undoubtedly affected his ability to focus and keep track of his many attempts to comply with the Grievance Process and bring his mental health claims to the attention of the proper prison officials.

## III. Conclusion

When a failure to exhaust administrative remedies is the prisoner's fault, the affirmative defense will be sustained and the case is over. *Pavey,* 544 F.3d at 742. But, when prison officials prevent a prisoner from exhausting, that failure to exhaust is innocent and the affirmative defense will not be sustained. *Id.* This is a case in which Mr. Farmer was innocent in his failure to complete the exhaustion process. Therefore, the defendants' defense of failure to exhaust available administrative remedies is **rejected.**

The action shall proceed to the merits of Mr. Farmer's claims.

The magistrate judge is requested to set a status conference to direct the further development of this action.

The clerk is directed to **update the docket** to reflect that Mr. McNeil's limited representation of Mr. Farmer has concluded. Mr. Farmer is once again proceeding *pro se.*

IT IS SO ORDERED this 13th day of January, 2017.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jeremiah Farmer, DOC #978522, Westville Correctional Facility, Electronic Service Participant – Court Only

Electronically registered counsel

Magistrate Judge Tim A. Baker

NOTE TO CLERK: PROCESSING THIS DOCUMENT REQUIRES ACTIONS IN ADDITION TO DOCKETING AND DISTRIBUTION.